UNITED STATES of America ex rel. C. Hobart KEITH, Appellant,

v.

SIOUX NATION SHOPPING CENTER et al., Appellees.

No. 80–1404.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 19, 1980.

Decided Nov. 25, 1980.

---

C. Hobart Keith, pro se.

Thomas H. Barnes, Rapid City, S. D., for appellees; Donald A. Porter, Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, S. D., on the brief.

Before BRIGHT, ROSS and McMILLIAN, Circuit Judges.

BRIGHT, Circuit Judge.

C. Hobart Keith appeals *pro se* from the district court's [1] judgment dismissing his action for alleged violations of a statute prohibiting non–Indians from trading with Indians on a reservation without a federal trading license. Keith sues as a *qui tam* litigant,[2] acting under the authority of 25 U.S.C. § 201 (1976).[3] He seeks to recover statutory penalties against 128 defendants in the Rapid City, South Dakota, area for trading on the Pine Ridge Indian Reservation without having obtained a license from the Commissioner of Indian Affairs. We affirm.

Keith's complaint alleges that the defendants violated 25 U.S.C. § 264 (1976),[4] which provides for sanctions against non–Indians

---

**1.** The Honorable Andrew W. Bogue, Chief Judge, United States District Court for the District of South Dakota. The decision is reported as *United States ex rel. C. Hobart Keith v. Sioux Nation Shopping Center*, 488 F.Supp. 496 (D.S.D.1980).

**2.** A *qui tam* action is a civil action brought by an informer for the Government under a statute that establishes a penalty for certain acts. The person who commences the suit and the Government divide the penalty.

**3.** That section provides:

All penalties which shall accrue under this title shall be sued for and recovered in an action in the nature of an action of debt, in the name of the United States, before any court having jurisdiction of the same, in any State or Territory in which the defendant shall be arrested or found, the one half to the use of the informer and the other half to the use of the United States, except when the prosecution shall be first instituted on behalf of the United States, in which case the whole shall be to their use. [25 U.S.C. § 201 (1976).]

**4.** Section 264 provides:

Any person other than an Indian of the full blood who shall attempt to reside in the Indian country, or on any Indian reservation, as a trader, or to introduce goods, or to trade therein, without such license, shall forfeit all merchandise offered for sale to the Indians or found in his possession, and shall moreover be liable to a penalty of $500: *Provided*, * * That no white person shall be employed as a clerk by any Indian trader, * * * unless first licensed so to do by the Commissioner of Indian Affairs, under and in conformity to regulations to be established by the Secretary of the Interior. [25 U.S.C. § 264 (1976).] *See* 25 C.F.R. § 251 (1980) (implementing regulations). The statute is a part of a statutory scheme designed to supervise trade within the Indian tribes and to protect governmental monopolies. The statute has not generated a great deal of litigation since its enactment in 1834, but has been interpreted and applied in a few cases, indicating its continued viability. *See United States ex rel. Hornell v. One 1976 Chevrolet Station Wagon*, 585 F.2d 978 (10th Cir. 1978); *United States v. Parton*, 132 F.2d 886 (4th Cir. 1943); *Buster v. Wright*, 135 F. 947 (8th Cir. 1905), *appeal dismissed*, 203 U.S. 599, 27 S.Ct. 777, 51 L.Ed. 334 (1906).

who trade on an Indian reservation without a license. The district court divided the defendants into several groups for trial, and Keith appeals from the judgment dismissing those defendants tried on November 14, 1979, February 8, 1980, and April 4, 1980.

From the district court's memorandum opinion [5] it appears that bureaucratic nonfeasance makes it impossible to obtain the federal trader's license required by section 264 in the Pine Ridge area in South Dakota. Wayne Adkinson, Administrative Manager of the Pine Ridge Reservation and a Department of the Interior employee, testified that he attempted to implement the licensing program on the Reservation, but abandoned his efforts because of the administrative difficulties and adverse public opinion that resulted. For example, his office did not even have any of the license forms available.

Although the section 264 license is not available on the Pine Ridge Reservation, it appears that the Oglala Sioux Tribe assesses a tribal tax requiring that businesses trading on the Reservation buy permits. The district court found that this license serves the same function as the federal trader's license: to protect against unscrupulous traders who seek to take advantage of Indians.

The district court found that only one defendant, Frank Groomes, engaged in trade at Pine Ridge within the meaning of section 264.[6] Although Groomes traded without a section 264 license, he did obtain the Oglala Sioux Tribal trading permit.

The district court held that it would be unfair to fine Groomes for not obtaining a license that was impossible to obtain. In dismissing the complaint against Groomes, the district court further held that any person who obtained a tribal permit would be considered to be in substantial compliance with the licensing requirement of section 264 because of the Department's failure to implement the section 264 program.

We agree with the district court that given the unavailability of the federal trader's license at Pine Ridge Indian Reservation, Groomes' conduct does not amount to a violation of section 264. It would be both ironic and unjust to fine Groomes for not having obtained an unobtainable license.[7] Moreover, the Oglala Sioux Tribe, on whose reservation Groomes trades, has awarded him its trading permit. Under these circumstances, Groomes must be deemed to be in substantial compliance with the legal requirements of the statute.[8]

The district court found that defendants Green Star Homes, Inc., and Rushmore Homes, Inc., executed sales of goods to the Reservation.[9] It held that these sales do not come within the statute. We need not reach this issue because no federal traders' license is available for this activity. In the absence of federal regulations defining what constitutes trade on the Reservation within the meaning of the statute, the district court did not err.[10]

For these reasons, we affirm the district court's judgment.

5. No transcript has been provided as part of the record on appeal.

6. Groomes is a non–Indian doing business as a rancher and seller of cattle to Indians on the Reservation.

7. The better practice would have been to bring a mandamus action against the Secretary of the Interior. See *Rockbridge v. Lincoln*, 449 F.2d 567 (9th Cir. 1971), in which the Navajo Tribe sued to force the Secretary to adopt and enforce rules and regulations governing traders doing business on its reservation.

8. We limit our holding to the particular facts of this case, which disclose that the Government has failed to make available a federal license to

traders. A trader who at least has obtained a license from the Tribe should not be subject to the § 264 fine.

9. The district court found that defendants Knecht Lumber Company and Kluthe and Lane Insurance Agency, Inc., did not sell any products on the Reservation. As there was no indication that they even delivered to the Reservation, their activities would not come within the ambit of § 264.

10. Our disposition of the case makes it unnecessary to reach the other arguments for reversal raised by Keith in his brief.